Texas, and we'll begin with counsel for Fanning, is it Najvar, Najvar, okay, Najvar, okay, Najvar. Good morning, your honors, and may it please the court. So as you know, appellant has a motion to remand that's been carried with the case, and in light of the city's brief, our position on that has sort of changed or, you know, the need for remand I think is gone, as we say in our brief, at least with respect to the, especially with respect to the claims under the original code, and I believe also with respect to the prospective claims as well. Okay, how does the fact that the Supreme Court has now granted cert in the Reagan case throw, I mean, how does that fit into all of this? Well, Reagan, I don't believe it affects us, because the issue in Reagan is whether the on versus off premises distinction renders Austin's sign code content based. That's the issue that the court granted cert on, that's all that the city's arguing, and the city, throughout our briefing in this case, Fanning has argued that regardless of the level of scrutiny, the city has not met their burden here, because they've not ventured any reasons to defend any of the distinctions that we've identified in the Chabonet Park sign code. So in other words, I mean, this is a First Amendment case, it's not some kind of rational basis, you know, challenged to an optometrist economic regulation, right? Whatever the level of scrutiny is, the city of Chabonet Park has the burden under the First Amendment to explain why it distinctly, why it bans banner signs, for instance, versus flags under the new code, or why it bans banner signs, but allows this exception for, you know, other types of banners. But if it bans all banners, or bans all flags, or bans all anything, then how is it content based? Well, so if we're talking about, the question I think goes to the amended ordinance, because Chabonet Park took out this exception for this window of time during October, right? So they said, well, all banners are now banned going forward. But they also, in that amendment, for the first time, they've included this generous allowance for flags, you can have up to three flagpoles, and put non-commercial flags, it says, in front of your home in Chabonet Park, right? You can have up to 160 square feet of flags, but now they've completely banned banners. So you can have a United Nations type display of flags in your front yard in Chabonet Park, all year long, but you can't put up a banner for a 4th of July party for two or three days, which is what my client has done. Right, but that's not content based. Well, our argument is that it is content based, because it favors a particular type of, essentially the argument in the brief is that there's, that the flags are a type of banner. So they're allowing you to put, and the practical effects of the flag allowance now allows a particular type of banner that are, you know . . . Well, but now, wait a minute, could she fly a flag that says, come to our 4th of July party? Well, I think she probably could. So again, back to Judge Haynes' question, how is the prohibition on all banners content based? She could, but so with respect to the facial claims, the court has to address the code on the space. So she wants to put up a flag regarding the 4th of July, but if the ordinance is at issue on its face, you have to look at the fact that it also bans non-commercial flags. These flags, there's no content limitation, except for they can't be commercial flags, and they, or they can't draw attention to a business. So it's not just advertising a business, and we discussed this in the briefing, but it's anything that draws attention to a business would not fall under that residential flag exception. So if she wanted to put up a flag, or somebody in Chavano Park that says, you know, go leave Facebook and join Parler, right, which a lot of conservatives did a few months ago because of censorship on Facebook, that would draw attention to a business, Parler, which is a commercial enterprise, and would be banned under that. Oh, but we're getting pretty hypothetical on that point. I don't know if that's related to a business versus political speech, and I mean, the fact is none of that is at issue, right? I mean, in other words, whether she could fly the Golden Arches flag at her house versus come to my Fourth of July party is probably more apropos, but that's the classic distinction between commercial speech and other, but help me with something. I will say this, in true confession, I'm not a First Amendment lawyer, I was a civil litigator when I practiced law, so I may just be, I want you to help guide my thinking here just to clarify what's at issue. So they amend the ordinance at some point after she's asserted her claims, correct? Correct. And so now, instead of this ban except for the one week, which happens to be the night out on crime, so set aside her claims about the prior statute, is the amended statute even at issue here? In other words, has she alleged prospectively under the amended ordinance in this case that she's going to be harmed because of the total ban, or is that amended statute irrelevant here? Well, no, it's absolutely at issue, and this is, so the standard is stated in the Northeastern Florida case, which we've cited in the brief, when the relevant law is changed during the course of an appeal, the court still has authority to address it if the plaintiff is essentially injured in the same way. It doesn't have to be the exact same way. There's a Fifth Circuit case we cite from 2021 where they actually acknowledged that the plaintiffs were acknowledged in a lesser, were injured to a lesser degree, but the case was not moved because it was . . . Couldn't we find it not right if we, because we don't know how her situation, why she isn't putting up flags that say, you know, because her issue never, I don't recall her raising some issue about wanting to do commercial banners. She wanted to do banners about parties that she was having. Well, no, that . . . So if she were to do a flag that says, come to my party, that would be okay under the amended order. So isn't it not right for us to start addressing how her life might have changed by the amended ordinance? Well, no, Your Honor, we don't believe that because, and it's, record page 751 is her deposition testimony where she talks about, you know, the intent. There's several places in her deposition, but record 751 is a good place. Oh, I'm sorry, 751 is where she talks about wanting to put multiple signs up, different types of signs. Well, it's also, okay, so all of her allegations of future intent, her desire to put these banners up is also at 751. So she says specifically in the deposition, I want to put a banner up in my yard, I want to put banners up in other neighbors' yards with their permission. So . . . But again, we would, I thought she was talking about, she wanted to do it around the 4th of July, not in the first week of October or whatever that date range was. In other words, she was talking in the context of the prior statutes, prior statutes, the prior ordinance, not the amended ordinance. I mean . . . Well, that's right, but the way I understand Northeastern Florida and the relevant case law, which we've cited, again, another case from the Fifth Circuit in our brief on that, as long as the plaintiff is injured in a substantially the same way . . . Mr. Potter, we know she is. That's our question. Because, like I said, it seems to me a flag is high up in the air. It's actually more likely to be seen waving around when we come to my 4th of July party than a banner that's lower down or a yard sign that's even further down. Well, it may be, but it costs . . . I mean, you have to put a flagpole up. The city's flag, you know, allowance allows flags that are put on a flagpole. You have to insert a flagpole, which may mean, you know, you have to . . . Well, but we don't know what that's, you know, how expensive that is for her, how much that would cost her problems, how much . . . because she wants to put them in the HOA yard, and we don't know if the HOA yard has flagpoles. I mean, so all of that is relevant, interesting information that we're not in a very good position to do because we're not district court. So why wouldn't we just say the amended ordinance is, you know, not ripe yet because we don't know the facts, and then we deal with the original one, and then tell me why we do. So what is left, other than she wants the signs back, I guess, that they have in her closet, but assuming arguendo that they said, all right, we'll hand them over, what else is she looking for from the past? Well, let me go back to where I started then because, as I said, our motion to remand is still on . . . has been carried with the case. We filed a motion to remand, especially the prospective claims, and we said exactly what was amended after the notice of appeal was filed, or at least my client wasn't notified or aware of it until after we filed the appeal. So we haven't had the chance to amend our pleadings or, you know, if the city wants additional evidence in the record to defend themselves, I mean, they haven't said that in their brief, and that's why I sort of back away from the motion to remand because I think if the court can, you have the authority to declare the complete ban on banner signs in the amended ordinance unconstitutionally. Well, but I think Judge Haynes and I are getting to the same point, and she said it better than I. The ripeness issue. This strikes me, a challenge to a wholesale ban on banners is different than the challenge she asserted and litigated below, which was the challenge to the timing of when the banners could be put up. In other words, they allowed this one week, it wasn't the 4th of July week, and so she was challenging what, you know, again, she argues is a content-based restriction on speech. You can only post neighborhood night out banners, not the other. It strikes me as a different claim altogether that she's challenging a wholesale ban on banners and saying that basically the city can't do that. That's a totally different challenge to me. Tell me how I'm wrong. Well, I mean, it is, I'm not saying it's exactly the same, but I'm saying she's injured in substantially the same way in that she's prevented from putting out the banner signs that she wants to put out every 4th of July, right? She still is disallowed from doing that. Now the amended ordinance changes the legal arguments. There are new distinctions that are relevant to our argument, and the flag is one that we pointed out, but there's also a few weeks after the ordinance was amended, the city also passed this special exception for COVID-related business, or the language of it says the city manager can allow businesses and business districts to put up, you know, COVID-related messages on banners. So if the city, and again, it doesn't matter what level of scrutiny we're under. Let me ask it this way. If we were to simply affirm, we just enter an opinion that says affirm, is there anything that would prevent her from suing under the, about the amended statute going forward? I realize we could say things in an opinion that might affect it, but I'm just saying if we just wrote affirm, then that would address the original code, but would it address anything about the amended? Um, so, I mean, the district court has not spoken on the amended code. Um . . . Well, because the claim wasn't asserted. Courts aren't supposed to reach claims that aren't asserted before the court. Well, that's right. I'm trying to just walk through this. What I'm saying is, if it wasn't right, and she's got the cause of action, she can file it and go forward with it. Maybe it has merit, maybe it doesn't. Maybe Reagan from the Supreme Court tells the family. I'm not saying it would have validity. I'm just saying, I'm not sure why we're addressing something that didn't before us. Well, you have a request to remand, right? Well, that's right, Your Honor, and I'm not demanding that you do. I mean, we have our motion to remand on file. That was our initial argument, and we argued pretty clearly with a lot of case law from the circuit that said, your preference, this circuit's preference when something like this happens, when there's an amendment to the relevant law, is to send it back to the district court. Okay, let me ask you, if we don't want to address the amended code, we just want to address the original code, I guess she's still seeking damages. What exactly is she, what exactly is left of the original code, given the amendment? Well, I'll address that, and if I may just complete a thought on, with respect to your question of, if you were to just, you know, affirm the claims regarding the amended code, I think that would be, the, oh, if you were to just affirm the judgment, right. That's right. Okay, so, right, she could still refile another lawsuit, but that's unfair to Fanning, and that's not, it's a mootness analysis. The city's argument is mootness. They have the burden to prove that, if this court doesn't want to address it, you should send it back to the district court, otherwise my client has to pay another filing fee and start the whole process over, whereas, you know, it might go to a different judge, you know, if you remand it . . . Well, that might be good for them. Well, it might, but . . . Tell me on the original code, what's left? So, it's not, so there's a claim for nominal damages, of course, but there's also the equitable  seeking. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay.       Unfortunately for her, I have no idea what the core reason is. But clearly, she testified that she had professionally printed for this rain check party, those are . . . Do they have them, still? My understanding is the city has them, I have not been notified of them. Because I'm just clueless why you would have this lengthy litigation and not just give those back. We've asked for them since we filed the complaint. And no one knows? Nobody's made any offer otherwise. Yes, well, I think your opponent knows what my first question is going to be . . . Um . . . Well . . . Because that just makes no sense to me. I don't know why they want to hang on to these banners. Wow, this is changing our lives having these banners around about this 4th of July party from three years ago. I mean . . . Right. And . . . There's no logic to that to me. It's not the same thing as I'm holding on to money or something like that. No. I think probably they did it because they wanted to defend the original ordinance. They didn't want my client to win the case and have the right to put her banners up for the 4th of July.   I mean . . . Well . au , au , au